UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

HAMID HASSAN RAZA; MASJID AL-ANSAR; ASAD DANDIA; MUSLIMS GIVING BACK; MASJID AT-TAQWA; MOHAMMAD ELSHINAWY,

                                     Plaintiffs,

                  - against -

CITY OF NEW YORK; MICHAEL R. BLOOMBERG, in his official capacity as Mayor of the City of New York; RAYMOND W. KELLY, in his official capacity as Police Commissioner for the City of New York; DAVID COHEN, in his official capacity as Deputy Commissioner of Intelligence for the City of New York,

                                  Defendants.

------------------------------------------------------------------------x

13 CV 3448 (PKC)(JMA)

ORAL ARGUMENT REQUESTED

## DEFENDANTS' BRIEF IN OPPOSITION TO <u>PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY</u>

                               MICHAEL A. CARDOZO
                                Corporation Counsel of the
                                City of New York
                                Attorney for Defendants
                                100 Church Street
                                New York, New York 10007
                                (212) 356-3532

Of Counsel:
Peter G. Farrell
Alexis L. Leist
Anthony DiSenso

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT

      POINT I

           DISCOVERY SHOULD START WITH THE
           DOCUMENTS RELATED TO PLAINTIFFS ...........................................4

           Under Defendants' Bifurcated Discovery Proposal
           Plaintiffs Will Have Discovery Related to Their
           Individual Claims and Motion for Preliminary
           Injunction ................................................................................7

      POINT II

           PLAINTIFFS' REQUEST FOR "COMPARATOR"
           DISCOVERY IS FUTILE ........................................................10

           Plaintiffs' Mixed Motive Cases Are Not Persuasive ................................14

      POINT III

           PLAINTIFFS' PROPOSED DISCOVERY IS
           OVERBROAD AND WOULD CAUSE
           SUBSTANTIAL HARM TO THE
           INTELLIGENCE BUREAU'S OPERATIONS ........................................14

      POINT IV

           PLAINTIFFS' PROPOSED DISCOVERY WILL
           RESULT IN UNWARRANTED AND
           PREMATURE LAW ENFORCEMENT
           PRIVILEGE DISPUTES ........................................................16

      POINT V

           PLAINTIFFS CANNOT MEET THE STANDARD
           FOR EXPEDITED DISCOVERY ..........................................21

CONCLUSION.................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                    **Pages**

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 4, 9, 10

*Askins v. Doe*,
727 F.3d 248 (2d Cir. 2013) .................................................................................. 7

*Better Packages Inc. v. Zheng*,
05-4477 (SRC), 2006 U.S. Dist. LEXIS 30119 (D.N.J. May 17, 2006) ................................. 23

*Brown v. City of Oneonta*,
221 F.3d 329 (2d Cir. 1999) ............................................................................. 8, 10

*Burke v. Town of East Hampton*,
99-CV-5798 (JS), 99-CV-5799 (JS),
2001 U.S. Dist. LEXIS 22505 (E.D.N.Y. March 16, 2001) .................................................. 13

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ................................................................................... 22

*In re City of New York*,
607 F.3d 923 (2d Cir. 2010) ........................................................ 3, 16, 17, 18, 19, 20

*Dellwood Farms, Inc. v. Cargill, Inc.*,
128 F.3d 1122 (7th Cir. 1997) ................................................................................ 18

*In re Dep't of Investigation of the City of New York*,
856 F.2d 481 (2d Cir. 1988) ................................................................................... 17

*Dones v. City of New York*,
No. 07 Civ. 3085 (SAS), 2008 U.S. Dist. LEXIS 53681
(S.D.N.Y. July 9, 2008) ........................................................................................ 13

*Fazaga v. FBI*,
884 F. Supp. 2d 1022 (C.D. Ca. 2012) ..................................................................... 20

*Hartman v. Moore*,
547 U.S. 250 (2006) .................................................................................... 6, 7, 14

*KWG Partners, LLC v. Sigel*,
11-CV-2890 (NGG) (JMA), 2011 U.S. Dist. LEXIS 75900
(E.D.N.Y.  July 14, 2011) ................................................................................ 21, 23

*Laird v. Tatum*,
408 U.S. 1 (1972) ............................................................................................... 21

**Cases**                                                                    **Pages**

*Latrieste Restaurant v. Village of Port Chester,*
   188 F.3d 65 (2d Cir. 1999)..................................................................... 12

*Litwin ex rel. Shareholders v. Ocean Freight, Inc.,*
   865 F. Supp. 2d 385 (S.D.N.Y. 2011)................................................... 23

*McCleskey v. Kemp,*
   481 U.S. 279, 294-296 (1987) ........................................................... 5, 8

*Mt. Healthy City Board of Ed. v. Doyle,*
   429 U.S. 274 ......................................................................................... 14

*N. Atl. Operating Co. v. Evergreen Distribs., LLC,*
   13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 143948
   (E.D.N.Y. October 4, 2013)............................................................ 22, 23

*National Congress For Puerto Rican Rights by Perez v. City of New York,*
   191 F.R.D. 52 (S.D.N.Y. 1999) ........................................................... 11

*Neilson v. D'Angelis,*
   409 F.3d 100 (2d Cir. 2005)................................................................. 13

*Notaro v. Koch,*
   95 F.R.D. 403 (S.D.N.Y. 1982) ....................................................... 21, 22

*Personnel Administrator of Mass v. Feeney,*
   442 U.S. 256 (1979)......................................................................... 4, 10

*Pierre v. City of New York,*
   No 05-CV-5018 (JFB) (KAM), 2007 U.S. Dist. LEXIS 60707
   (E.D.N.Y. August 17, 2007) ................................................................... 9

*Steptoe v. City of Syracuse,*
   No. 5:09-CV-1132 (NPM/DEP), 2011 U.S. Dist. LEXIS 139061
   (N.D.N.Y. November 1, 2011) ................................................................ 9

*In re Terrorist Bombings of U.S. Embassies in East Africa,*
   552 F.3d 157 (2nd Cir. 2008)................................................................ 19

*United States v. Khan,*
   No. 04-4519, No. 04-4520, No. 04-4521, No. 05-4811,
   No. 05-4818, No. 05-4893, 2006 U.S. App. LEXIS 22791
   (4th Cir. September 7, 2006)........................................................ 11, 13

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977)............................................................................... 4

## PRELIMINARY STATEMENT

Defendants respectfully submit this brief in opposition to Plaintiffs' Motion For Expedited Discovery.  Plaintiffs' motion should be denied because the "expedited" discovery they seek to support their contemplated motion for a preliminary injunction is unwarranted, overbroad, and will grind the litigation to a halt with discovery disputes.

When examined in the full and proper factual context, plaintiffs' motion asks this Court to ignore the stark reality that has faced New York City since the September 11th terrorist attacks through the present.  The terrorist threat facing New York City from Islamists radicalized to violence is real, insidious, and ongoing, and the demands placed on law enforcement by that threat are wholly unique.  When viewing the plaintiffs' motion through this lens, it becomes unreasonable, unworkable, and potentially dangerous to law enforcement personnel and the public at large.  This backdrop underscores the imperative that discovery be no broader than needed to resolve plaintiffs' claims in order to not undermine the Intelligence Bureau's operations and hamper its efforts to protect New York City.

Plaintiffs seek huge swaths of sensitive information that are irrelevant to their individual claims of constitutional injury at this stage.  Discovery of investigations and surveillance of non-plaintiffs would not lead to evidence of causation as to whether these plaintiffs were investigated or surveilled without suspicion or other legitimate purpose.  Supreme Court precedent indicates that non-party evidence involving unique facts not involving the parties does not support an inference of discriminatory purpose with respect to plaintiffs' individual claims.

In contrast, defendants' pending proposal for bifurcated discovery would provide all information regarding any investigation or surveillance of these six plaintiffs, and the reasons for

those actions.[1]  It is that information that is germane to whether plaintiffs can meet their burden on their contemplated motion for a preliminary injunction by showing irreparable harm and a likelihood of success on the merits.  These documents will also assist the Court in deciding law enforcement privilege disputes in the event plaintiffs are later permitted to seek non-party discovery as part of their *Monell* claim or at some other later stage.

Plaintiffs' expedited discovery requests are plainly overbroad.  They seek **all** documents concerning **all** investigations and **all** surveillance of any Muslim individual or organization, without limitation, over a nine year period, including active and on-going investigations.  Plaintiffs also seek information about any investigative or surveillance activities that touch upon the religious speech, beliefs, practices or activities of any non-Muslim individuals and religious organizations.  In essence, plaintiffs are requesting a review of every document within the Intelligence Bureau[2] because the categories used by plaintiffs—Muslim and non-Muslim— necessarily capture all work done by the Intelligence Bureau over the past nine years.

Plaintiffs' requests for expedited discovery are also impractical and unworkable because the NYPD Intelligence Bureau does not maintain or categorize documents by religion.  Because Intelligence Bureau documents are not maintained on the basis of religion, a response to plaintiffs' requests would require a document by document review to determine if it relates to Muslims or non-Muslims.  The impracticality of plaintiffs' requests is further demonstrated because identification of the documents sought would require a substantive review of every document within the Intelligence Bureau to not only determine if the document pertains to a non-

---

[1] Defendants moved for bifurcated discovery before the Honorable Joan M. Azrack on September 10, 2013. (D.E. 11).

[2] The Intelligence Bureau was known prior to October 2013 as the Intelligence Division.  The change in nomenclature is administrative and has no relevance to the issues addressed in this motion.

Muslim, but to then further determine if the document relates to that non-Muslim's religious speech, beliefs, practices or activities.

Plaintiffs' discovery requests go way beyond the relief plaintiffs seek in their motion for a preliminary injunction, which is limited to the six named plaintiffs. Specifically, plaintiffs intend to seek segregation of records related to them (not every other Muslim and non-Muslim) and enjoin investigations of plaintiffs (not every other Muslim and non-Muslim). Nor is plaintiffs' preliminary injunction motion directed at their broader *Monell* claim.

Finally, due to the size and scope of plaintiffs' "expedited" discovery requests which seek "Muslim" and "non-Muslim" non-party discovery and internal Intelligence Bureau strategy and policy documents, as well as the documents pertaining to plaintiffs' themselves, there will likely be law enforcement privilege disputes over the documents. The Court would be at a severe disadvantage in deciding whether plaintiffs can satisfy their burden of showing a compelling need—or whether the public interest in non-disclosure outweighs that need—as laid out in the Second Circuit decision, *Dinler v. City of New York (In re City of New York)*, 607 F.3d 923 (2d Cir. 2010), without first having the evidence related to these six plaintiffs. Moreover, that litigation within the litigation would require enormous resources and time to be decided, and it would defeat the purported purpose of plaintiffs' motion which is to obtain expedited discovery and move for a preliminary injunction in short order.

In evaluating plaintiffs' sweeping discovery requests, the balance of harms tips clearly in favor of defendants. Plaintiffs will not be prejudiced under defendants' discovery proposal. If the record after bifurcated discovery warrants the additional discovery plaintiffs seek, they will be able to obtain it. On the other hand, engaging in the breadth and scope of discovery plaintiffs have requested would be highly prejudicial and staggeringly burdensome to defendants. The

disclosure of extremely sensitive and confidential investigations that do not relate to plaintiffs would jeopardize on-going and contemplated investigations, and the disclosure of such documents would harm the privacy interests of individuals who have been investigated, but not charged.   Importantly, such disclosures will endanger the safety and undermine the efficacy of undercover police officers and confidential sources who work with the Intelligence Bureau. Finally, given the sensitive nature of the documents at issue, highly trained intelligence personnel will be diverted from their critical policing function to document review and redaction, and this diversion of police resources will impair the Intelligence Bureau's ability to prevent another terrorist attack.

## ARGUMENT

## POINT I

### DISCOVERY SHOULD START WITH THE DOCUMENTS RELATED TO PLAINTIFFS

In an intentional discrimination case, like the one here, proof of discriminatory intent or purpose is a requirement to prove a violation of the Equal Protection clause.  *See, e.g.*, *Aschroft v. Iqbal*, 556 U.S. 662, 677 (2009) (Discriminatory purpose requires evidence that a decision-maker undertook a course of action "because of, not merely in spite of, the action's adverse effects upon an identifiable group.") (internal punctuation omitted), *quoting Personnel Administrator of Mass v. Feeney*, 442 U.S. 256, 279 (1979); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause");  .

The overwhelming bulk of the information sought in plaintiffs' proposed expedited discovery requests is about unrelated investigations and surveillance of non-plaintiffs.[3]  Plaintiffs claim that information about investigations of non-plaintiffs will allow the Court to "judge the influence and strength of religion as a factor in the investigation of *these* plaintiffs."  Plaintiff's Memorandum of Law in Support of their Motion for Expedited Discovery (hereinafter "Pl. Memo."), at 10.   However, information about unrelated investigations cannot show that investigations or surveillance of these plaintiffs was done for a discriminatory purpose because each investigation is based on unique facts and circumstances and has a unique trajectory.  And even if non-party discovery showed that other individuals had been improperly investigated, that would not constitute evidence that these plaintiffs were subject to unwarranted investigation.  Under such circumstances, the Supreme Court has indicated that facts from those unrelated cases cannot be relied upon to draw any inference to the case at hand.  *See McCleskey v. Kemp,* 481 U.S. 279, 292, 294-96 (1987) ("Thus, to prevail under the *Equal Protection Clause,* McCleskey must prove that the decisionmakers in *his* case acted with discriminatory purpose.") (emphasis in original).[4]   For example, in a retaliatory prosecution case, which bears the same causation requirement as plaintiffs' equal protection claims here, the Supreme Court has stated:

_____

[3] Plaintiffs seek expedited discovery in support of their contemplated motion for a preliminary injunction which is limited to relief regarding plaintiffs as it seeks segregation of records about plaintiffs and to enjoin any investigations of plaintiffs.  *See* Plaintiffs' Letter to Judge Chen dated September 12, 2013 at 2 (D.E. 13); Pl. Memo. at 18.

[4] In *McCleskey*, the defendant, a black man who killed a white victim and was sentenced to death, claimed that the Georgia capital punishment statute violated the *Equal Protection Clause* through racial discrimination.  As evidence of this, McCleskey proffered a statistical study ("the Baldus study") which indicated that defendants charged with killing white persons received the death penalty in 11% of cases, but defendants charged with killing black persons received the death penalty in only 1% of the cases, among other statistics.  The Supreme Court dismissed McCleskey's equal protection claim stating "He offers no evidence specific to his own case that would support an inference that racial considerations played a part in his sentence . . . Accordingly, we hold that the Baldus study is clearly insufficient to support an inference that any

> Like any other plaintiff charging official retaliatory action, the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the same opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus. What is different about a prosecution case, however, is that there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge. Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause. *Hartman v. Moore,* 547 U.S. 250, 260-61 (2006).

Likewise here, the documents pertaining to the plaintiffs' investigations comprise the only information apt to prove or disprove discriminatory purpose.

This Court recognized that same principle when it stated at the pre-motion conference that the information regarding plaintiffs is more critical than anything else, and ultimately the only information from which plaintiffs will obtain evidence to prove they were subject to intentional discrimination.[5]  Information about unrelated investigations of non-plaintiff Muslims and non-Muslims is not relevant at this stage and discovery should start with the large number of documents related to these six plaintiffs. [6]

---

of the decisionmakers in McCleskey's case acted with discriminatory purpose." *Id.* at 292-93, 297.  The Court found that the statistics from the Baldus study were insufficient to support an inference of racial discrimination because both 1) too many factors would have contributed to the trial and sentencing decision, and thus any common standard by which to evaluate all cases where a defendant had or had not received the death penalty was non-existent, and 2) there were too many unique decisionmakers to infer that the statistical discrepancy was the result of racial discrimination. *Id.* at 294 - 96.

[5] Transcript of Pre-Motion Conference dated October 7, 2013 at 33: 7-25, 34: 1-19 annexed hereto as Exhibit A to the Declaration of Alexis L. Leist in Support of Defendants' Opposition to Plaintiffs' Motion for Expedited Discovery dated October 30, 2013 ("Leist Decl.").

[6] While these unrelated investigations arguably are relevant to plaintiffs' *Monell* claim, that claim is not part of plaintiffs' proposed motion for a preliminary injunction.  Indeed, plaintiffs cannot prove a *Monell* claim until they prove they suffered an individual constitutional injury.

**Under Defendants' Bifurcated Discovery Proposal, Plaintiffs Will Have Discovery Related To Their Individual Claims and Motion for Preliminary Injunction**

Defendants' proposal for bifurcated discovery focuses discovery on the information, in itself voluminous, related to the six plaintiffs.  Declaration of David Cohen In Support of Defendants' Opposition To Plaintiffs' Motion For Expedited Discovery dated October 30, 2013 (hereinafter "Cohen Decl.") at ¶ 29.  That discovery will contain the information relevant to deciding the likelihood of plaintiffs' success on the merits as it will disclose whether plaintiffs were investigated or surveilled, the extent of any investigation or surveillance, and the reasons for the NYPD's actions regarding the six plaintiffs.  Unlike plaintiffs' proposed expedited discovery requests regarding non-parties, defendants' proposed bifurcated discovery will directly address plaintiffs' primary allegations.

For example, plaintiffs repeatedly allege throughout the complaint that plaintiffs were investigated or surveilled **without suspicion** and that the NYPD's actions **toward plaintiffs** were driven based solely on their status as Muslims.[7]  Indeed, in their memorandum and at the

---

*See Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.").

The same is true with respect to the information plaintiffs have requested regarding the Intelligence Bureau's strategy and policy documents.  While those documents may be relevant to a *Monell* claim, plaintiff must first establish an underlying constitutional violation, in other words, they must establish that the NYPD had an improper motive for surveilling them. Martinez v. City of New York, No. 06 Civ. 5671 (WHP), 2008 U.S. Dist. LEXIS 49203, at *12. (S.D.N.Y. June 27, 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. July 27, 2009).  That question may be resolved by the documents directly related to plaintiffs.  *Cf. Hartman*, 547 U.S. at 260-61.

[7] *See* Complaint ¶¶ 1, 2, 4, 6, 24, 29, 30, 31, 32, 34, 35, 41, 123, 160 (D.E. 1); Plaintiffs' Letter to Judge Azrack dated September 11, 2013 at 1, 2, 4 (D.E. 12); Plaintiffs' Letter to Judge Chen dated September 12, 2013 at 1, 2, 3 (D.E. 13); Transcript from the Initial Conference dated September 12, 2013 at 8:14-17; 12:1-3 (annexed hereto as Exhibit B to the Leist Decl.); Leist Decl. Exhibit A at 32:21-24.

pre-motion conference, plaintiffs continue to outwardly claim that they dispute that the NYPD has any information that will support a legitimate purpose for the NYPD's actions toward them. Based upon the allegations in the complaint, and the plaintiffs' statements to this Court, the information which is both logically and legally relevant to plaintiffs' claims is the information about these plaintiffs.   That information will allow plaintiffs' claim, that they suffered a constitutional violation, to be proven or disproven before embarking on a fishing expedition in the hope of drawing "inferences" from unrelated investigations of non-party Muslims and non-Muslims—inferences that the Supreme Court has said will not support plaintiffs' individual equal protection claims where there are unique circumstances for each investigation.  *See McCleskey* at 294-296, 297.

A discussion of some of the documents that would be subject to discovery under defendants' bifurcated discovery proposal illuminates why plaintiffs' discovery requests are overbroad.  When the Intelligence Bureau is conducting investigations that have some nexus to political activity, such investigations must be authorized by the Deputy Commissioner of Intelligence and for each such investigation and any extension thereof, an Investigative Statement is prepared setting forth the predicate facts warranting the investigation.  Cohen Decl. at ¶ 29.   Accordingly, the discovery proposed by defendants thus would reveal the contemporaneous reasons for both the initiation and continuance of investigations that related to plaintiffs.[8]

---

[8] *See Brown v. City of Oneonta,* 221 F.3d 329, 337-38 (2d Cir. 1999) (affirming dismissal of plaintiffs' equal protection claims because plaintiffs' factual premise, that they were questioned solely on the basis of their race, was not supported where plaintiffs were questioned on the legitimate basis of a physical description, including race, given by a crime victim– and although the police practices may have had a disparate impact on minorities, disparate impact is only a violation of the Equal Protection clause when the policy under review was undertaken with

Similarly, other documents regarding plaintiffs that would be produced pursuant to defendants' proposal include confidential raw unevaluated field reports ("field reports") that contain the initial raw intelligence gleaned from sources (including confidential sources), the internet, and other publicly available information.  Cohen Decl. at ¶ 29.  These documents will show the content, scope, and duration of any investigation or surveillance relating to plaintiffs.[9]

Additionally, under defendants' bifurcated discovery proposal, plaintiffs would be receiving the documents underlying the reference, for example, to plaintiff Masjid At-Taqwa within the Intelligence Note dated October 16, 2006 which plaintiffs use as an example of discovery they would need.  Pl. Memo. at 12.  Those documents would include any Investigative Statements regarding Masjid At-Taqwa and the field intelligence report from the exchange referenced in that Intelligence Note.

---

discriminatory intent); *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (where Supreme Court dismissed the complaint on its' face stating "[t]he September 11 attacks were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of al Qaeda, an Islamic fundamentalist group….It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims."); *Pierre v. City of New York*, No 05-CV-5018 (JFB) (KAM), 2007 U.S. Dist. LEXIS 60707, *45-47 (E.D.N.Y. August 17, 2007) (defendants granted summary judgment on plaintiffs' claims of intentional discrimination on the basis of race where plaintiffs asserted they were arrested without probable cause because they were minorities, where probable cause was found the Court stated such an assertion was without merit, and plaintiffs' assertion that full discovery had not been conducted was also without merit as on the existing record those who had information to establish the probable cause had been deposed); *Steptoe v. City of Syracuse*, No. 5:09-CV-1132 (NPM/DEP), 2011 U.S. Dist. LEXIS 139061, *38-39 (N.D.N.Y. November 1, 2011) (intentional discrimination equal protection claim dismissed where it was clear the police defendants' actions were directed at the plaintiff's conduct and not because of his race).

[9] As discussed further in Point II, because of the unique terrorist threat posed by Islamists radicalized to violence to even attempt to compare the content, scope, and duration of plaintiffs' investigations to other kinds of investigations is futile.

Significantly, none of the other documents that plaintiffs seek on their motion for expedited discovery (e.g., investigations of non-party Muslims and non-Muslims, and various policy documents, etc)  will contain evidence which would answer plaintiffs' alleged individual constitutional violations—that **they** were investigated without suspicion and solely because they were Muslim.  *See Iqbal*, 556 U.S. at 677 (Discriminatory purpose requires evidence that a decision-maker undertook a course of action "because of, not merely in spite of, the action's adverse effects upon an identifiable group.") (internal punctuation omitted), *quoting Personnel Administrator of Mass v. Feeney*, 442 U.S. 256, 279 (1979).

## POINT II

## PLAINTIFFS' REQUEST FOR " COMPARATOR" DISCOVERY IS FUTILE

Ignoring the undeniable fact that the terror threat facing New York City largely emanates from Islamists radicalized to violence, plaintiffs' expedited discovery requests seek purported "comparator" evidence of investigations and statistics related to non-Muslims.  Plaintiffs' First Request for the Production of Documents dated October 8, 2013 (hereinafter "Pl. Doc. Req.") Nos. 5-9.  While plaintiffs argue they need this information to support a selective enforcement claim, Pl. Memo. at 5, Footnote 2 and at 8, their complaint does not assert a selective enforcement claim nor does it allege an appropriate "comparator."  Plaintiffs have only pled an "express classification" theory.[10]  Thus, plaintiffs' request for "comparator" evidence should be denied on that basis alone.

---

[10] *See* Complaint ¶¶ 1, 2, 161, 162, 163, 164, Complaint at page 32, ¶ 4.  Plaintiffs' Letter To Judge Azrack Dated September 11, 2013 at 2 (D.E. 12); Plaintiffs' Letter to Judge Chen Dated September 12, 2013 at 2,4 (D.E. 13), and most recently at Pl. Memo. at 18.  Plaintiffs' attempt to now argue other types of equal protection claims not pled in their complaint should not be countenanced.  Pl. Memo. at 5, Footnote 2, and at 8, 9.  *See*, *e.g. Brown* at 337 (the Second Circuit found that plaintiffs had enumerated an express classification theory as plaintiffs contended that the defendants stopped and questioned plaintiffs solely on the basis of their race); *National Congress For Puerto Rican Rights by Perez v. City of New York,* 191 F.R.D. 52, 54

Even if plaintiffs had pled a selective enforcement claim, which they did not, there still is no appropriate comparator in this instance.  The threat from Islamists radicalized to violence is different and unique than any other threat facing New York City today and there is simply no group that would be comparable.  Cohen Decl. at ¶¶ 13-15.  First, the threat is driven by a violent jihadist ideology, which has proliferated worldwide via multimedia extremist propaganda that often features New York City as an iconic target.  *Id*. at ¶ 13.   Second, the threat is multidimensional, with local, national and international origins that can be, but are not always, interrelated, and, the potential pool of targets and victims is large.  *Id*. at ¶ 13.  Third, past plots in New York City and abroad have employed or hoped to employ suicide attacks, a feature that simply raises the stakes on the need for preemptive action.  *Id*. at ¶ 13.  Finally, a successful terrorist attack would not only have potentially devastating consequences in terms of loss of life,

---

(S.D.N.Y. 1999) (Amended Complaint held to contain an express racial classification where it stated that the plaintiffs were stopped and frisked solely on the plaintiffs' race and/or national origin)

Moreover, plaintiffs' reliance on the so-called "leaked documents" they have attached to their motion to demonstrate any express classification is misplaced.  If anything, certain of those documents, on their face, describe that the Intelligence Bureau is tasked to investigate terrorism and unlawful conduct.  Likewise, their assertion that the Radicalization report reflects the "conceptual underpinnings" of any NYPD policy is unwarranted.  Pl. Memo. at 9.  The Radicalization report was a report written to assist law enforcement authorities in understanding the homegrown radicalization process, which is the most serious terrorist threat the United States now faces.  Cohen Decl. at ¶¶ 22, 23.

Plaintiffs also rely on the fact that the NYPD may have been investigating paintball activities as evidence of improper purpose. Pl. Memo. at 17.  However, paintball activities have been recognized to be potential precursors to terrorist activity when accompanied with other factors.  *See e.g. United States v. Khan*, No. 04-4519, No. 04-4520, No. 04-4521, No. 05-4811, No. 05-4818, No. 05-4893, 2006 U.S. App. LEXIS 22791, at *3-4 (4th Cir. September 7, 2006) (a group organized to engage in activities in preparation for violent jihad began simulating combat through paintball exercises).

but would also have severe economic consequences for New York City, which depends on its status as a premier hub for business and tourism.

Plaintiffs were unable to articulate at the pre-motion conference what the comparator group would exactly consist of.  Leist Decl. Exhibit A at 22:5-23, 31:2-15. To the extent they then purport to define the appropriate comparator in their motion,  plaintiffs simplistically assert that it is any non-Muslim who **was** surveilled or investigated.  Pl. Memo. at 13.

In order to establish a violation of equal protection based on selective enforcement, the plaintiff must show: (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race or religion. *Latrieste Restaurant v. Village of Port Chester,* 188 F.3d 65, 69 (2d Cir. 1999) (Second Circuit reversed lower court and found that there was no evidence that a zoning restriction was selectively enforced).  Moreover, in order to prove selective enforcement, a plaintiff must demonstrate that the government knew of others **similarly situated** and then chose to **not** investigate them.  *Id.* at 70 ("Absent a showing that the Village knew of other violations, but declined to prosecute them, [plaintiff] would ordinarily be unable to show that it was treated selectively.")  Thus, plaintiffs' proposed requests for discovery relating to non-party, non-Muslim individuals and organizations should be denied because plaintiffs have not alleged or made a showing that any other individual or organization is **similarly situated** to plaintiffs, and that defendants were aware of such parties, but chose **not** to investigate them.

 The  similarly  situated  prong  is  not  to  be  taken  lightly.  In  determining  whether individuals are "similarly situated" the appropriate inquiry is "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated . . . the cases must be fair congeners . . . in other words, apples should be compared to

apples." *Burke v. Town of East Hampton*, 99-CV-5798 (JS), 99-CV-5799 (JS), 2001 U.S. Dist. LEXIS 22505, at *22 (E.D.N.Y. March 16, 2001).   Some courts have even held that the comparators must be *prima facie* identical.  *See*, *Dones v. City of New York*, No. 07 Civ. 3085 (SAS), 2008 U.S. Dist. LEXIS 53681, at *28 (S.D.N.Y. July 9, 2008) ("[T]he standard for "similarly situated" when bringing a selective enforcement claim is the same as in a "class of one" claim."); *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir. 2005) (Under a "class of one" claim analysis, "the comparators" circumstances must be prima facie identical.).   Accordingly, plaintiffs cannot even begin to craft discovery requests to seek an appropriate comparator until the information and circumstances known about plaintiffs is disclosed.

Plaintiffs' alternative theory for obtaining "comparator" discovery based on the duration, scope and invasiveness of surveillance or investigation of non-Muslims fares no better.  Because there is no comparable terrorist threat, as discussed above, other investigations of non-Muslims are not relevant to this theory either.  *See e.g. United States v. Khan*, 2006 U.S. App. LEXIS 22791, at *47-49 (where criminal defendants alleged that the government had not investigated and prosecuted other terrorist organizations, such as the Cambodian Freedom Fighters or the Irish Republican Army, **as aggressively as it had investigated and prosecuted them**, discovery on their selective prosecution claim was properly denied as the only distinguishing factor between the other terrorist groups and defendants was that defendants were Muslim in a post 9-11 world – and this did not make a valid showing – as it missed the very obvious fact that defendants were accused of supporting Al Qaeda and the Taliban, groups which were in direct conflict with the United States and the Executive branch was entitled to focus it prosecutorial energies on alleged terrorist groups that present the most direct threat to the United States and its interests) (emphasis added).

For all the foregoing reasons, plaintiffs' reliance on a comparator to seek discovery regarding non-plaintiffs is misplaced and should be rejected.

**Plaintiffs' Mixed Motive Cases Are Not Persuasive**

Plaintiffs also try to justify their proposed non-plaintiff discovery by pointing to "mixed motive" cases.  Pl. Memo. at 4.  However, their reliance on such cases is misplaced.  While plaintiffs try to argue that they do not need to demonstrate that religion was a sole, primary, or predominant factor, Pl. Memo. at 9, but instead just "a motivating factor," the Supreme Court has stated, in a case which plaintiffs cite, that a "motivating factor" **is** the same as a "substantial" factor.  *See Mt. Healthy City Board of Ed.,* 429 U.S. at 287 ("Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" – or, to put it in other words, that it was a "motivating factor" in the Board's decision not to hire him.").  Thus, plaintiffs must show that a discriminatory purpose existed and that it was a substantial factor behind defendants' actions.  Only if plaintiffs prove that religion was a substantial factor in the investigation of the plaintiffs, would the burden then shift to defendants.  *Cf. Hartman,* 547 U.S. at 260-261.  Accordingly, the fundamental threshold question is whether these six plaintiffs were investigated or surveilled because of their religion.  The only discovery needed to answer that key question is the bifurcated discovery proposed by defendants.

## POINT III

### PLAINTIFFS' PROPOSED DISCOVERY IS OVERBROAD AND WOULD CAUSE SUBSTANTIAL HARM TO THE INTELLIGENCE BUREAU'S OPERATIONS

Plaintiffs' overbroad requests should be denied because they would require extraordinary resources and impede the functioning of the Intelligence Bureau, which serves a vital function for New York City.  First, the discovery sought would jeopardize on-going and contemplated

investigations and compromise the Intelligence Bureau's methods and sources, thereby permitting those who would seek to carry out an attack greater ability to evade detection. Second, the discovery proposed by plaintiffs would endanger the safety and efficacy of undercover police officers and confidential sources who are central to the work of the Intelligence Bureau and harm the privacy interests of individuals who have been investigated, but not charged. Finally, responding to plaintiffs' overbroad requests would divert valuable and highly trained intelligence personnel from their critical policing function, including the prevention of terrorist attacks. Cohen Decl. at ¶ 32.

A review of plaintiffs requests' shows the overbreadth of the requests as well as the practical difficulty in responding to them. For example, plaintiffs seek documents from 2004 through the present, concerning surveillance or investigation of **all** Muslim individuals and organizations **without limitation**. *See* Pl. Doc. Req. Nos. 5 and 6. Because it is undeniable that the terror threat to New York City since at least September 11th has emanated from Islamists radicalized to violence, it stands to reason that most of the Intelligence Bureau's counter-terrorism investigations since September 11th have involved subjects who are Muslim. Moreover, plaintiffs' requests call for the vast majority of Intelligence Bureau documents pertaining to all of its activities, not just its counter-terrorism efforts. Cohen Decl. at ¶ 31. The burden to attempt to gather and produce that information—particularly in light of the fact that it is not collected, organized, or retained on the basis of religion—would require enormous labor and resources and would severely hinder the Intelligence Bureau's operations. Cohen Decl. at ¶¶ 2, 32.

Similarly, plaintiffs are asking this Court to order disclosure of the same information about non-Muslims with a proposed limitation that the documents be related to the religious

speech, beliefs, practices or activities of those non-Muslims.  In addition, plaintiffs' proposed document requests seek statistics that do not exist concerning surveillance and investigations of Muslims and non-Muslims with various qualifiers based on religion.  *See* Pl Doc. Req. Nos. 7, 8, and 9.  The same religious qualifiers are used in plaintiffs proposed interrogatories.  *See* Plaintiff's First Set of Interrogatories Dated October 8, 2013 (hereinafter "Pl Interr."), Nos. 1(a), 1(b) and 1(c).  Because the Intelligence Bureau does not categorize or maintain files or documents based upon religion, compliance with plaintiffs' requests would require a document by document review to determine if a document related to religious speech, beliefs, practices or activities of a non-Muslim individual or organization.  Cohen Decl. at ¶¶ 31-32.

In sum, in order to assemble responsive documents, the NYPD would have to review virtually every document maintained by the Intelligence Bureau over a nine year period.  As detailed in Deputy Commissioner Cohen's declaration, such an undertaking would be extremely burdensome and have a severe negative impact on the operations of the NYPD's Intelligence Bureau.  Cohen Decl. at ¶¶ 2, 32.

## POINT IV

### PLAINTIFFS' PROPOSED DISCOVERY WILL RESULT IN UNWARRANTED AND PREMATURE LAW ENFORCEMENT PRIVILEGE DISPUTES

Because the discovery unrelated to the individual plaintiffs is not necessary to resolve plaintiffs' proposed motion for a preliminary injunction, allowing plaintiffs to seek that discovery at this time will result in wasteful and protracted discovery disputes as the information sought involves law enforcement privileged information. *See In re City of New York*, 607 F.3d at 944 (finding that the law enforcement privilege clearly applied to sensitive intelligence reports involving NYPD undercover investigations into potentially extremist groups).  In *In re City of New York*, which is the touchstone for law enforcement privilege analysis in this circuit, the

Second Circuit found, after an *in camera* review, that similar intelligence reports from the Intelligence Bureau were subject to the law enforcement privilege and too sensitive to disclose, regardless of what protections were put in place.  607 F.3d 923.

Despite the Court's expressed concern during the pre-motion conference,[11] plaintiffs fail to acknowledge that the documents are highly sensitive in nature and undoubtedly subject to the law enforcement privilege.  Nor do they make an argument for how they would overcome the privilege.  Yet, the overwhelming weight of authority, in this Circuit and in others, concerning investigations into potential terrorist activities counsel against disclosure of the material sought by plaintiffs, **at all**, regardless of the safeguards offered by the seeking parties.

The documents at issue contain:

[E]xtraordinarily sensitive information that, if disclosed, would reveal: (i) the details of discontinued, ongoing and contemplated investigations; (ii) the identities of subjects of contemplated investigations; (iii) the identities of confidential sources and confidential information that pertains to criminal investigations; (iv) intelligence methodologies used in the detection and prevention of crimes and the apprehension of perpetrators; (v) the identities of individuals who have been investigated, but not publically charged, thereby violating their privacy rights; and (vi) the identities of individuals who have chosen to share what they believed to be important and relevant information that needed to be investigated or reviewed by the NYPD in order to address public security and safety matters, including those involving potential support for acts of terrorism.  Cohen Decl. at ¶ 27.

This is precisely the type of information that is subject to the law enforcement privilege.[12]

In *In re City of New York*, the documents at issue were "field reports" from the NYPD's

---

[11] Leist Decl. Exhibit A at 26:9 – 26:15.

[12] *See e.g. In re City of New York*, 607 F.3d at 944 (Noting that the Law Enforcement Privilege protects "information pertaining to "law enforcement techniques and procedures," information that would undermine "the confidentiality of sources," information that would endanger "witness and law enforcement personnel [or] the privacy of individuals involved in an investigation," and information that would "otherwise . . . interfere[ ] with an investigation."" (citing *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)).

Intelligence Bureau concerning surveillance activities of the NYPD preceding the 2004 Republican National Convention.  607 F.3d at 929-30.  The Second Circuit found that the law enforcement privilege clearly applied to the field reports.  *See id.* at 944 ("The Field Reports, even in their redacted form, contain detailed information about the undercover operations of the NYPD.  This information clearly related to "law enforcement techniques and procedures."").  Moreover, even in their redacted form, such documents risk disclosing the identity of undercover officers and informants, because, as the Second Circuit recognized, "[p]ulling any individual "thread" of an undercover operation may unravel the entire "fabric" that could lead to identifying an undercover officer."  *Id.*

While the law enforcement privilege is a qualified privilege, there is a strong presumption against non-disclosure.  *See In re City of New York*, 607 F.3d at 945 ("[W]e agree with the Seventh Circuit that "there ought to be a pretty strong presumption against lifting the privilege."" (citing *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997)).  In order to overcome the presumption of non-disclosure, plaintiffs must demonstrate that: (1) the suit is not frivolous; (2) the discovery sought is not available through other means; and (3) the plaintiffs have a compelling need for the information.  *Id.* at 945.

Whether or not plaintiffs can demonstrate a compelling need for information sought in their first document request is not at issue, defendants have already conceded that they will provide discovery related to investigations specifically concerning plaintiffs, subject to adequate protections.[13]  As discussed *infra* at Point I and II, however, intelligence information unrelated to plaintiffs is not necessary for the Court to decide plaintiffs' Equal Protection claim, especially at

---

[13] Regardless of whether plaintiffs can demonstrate a compelling need for Intelligence Bureau documents directly related to them, such documents are nevertheless extremely sensitive, subject to the law enforcement privilege, and require adequate safeguards to protect against non-disclosure, inadvertent or otherwise.

the preliminary stage.  Moreover, plaintiffs' need for discovery in the civil context is less fundamental than in the criminal context, further diminishing any claim of compelling need.  *See id.* at 936, n.12 ("We have no trouble concluding that a plaintiff's right to discovery in a civil action is less fundamental than a criminal defendant's constitutional right "to present a meaningful defense."" (citing *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157 (2nd Cir. 2008)).  Plaintiffs have not—and cannot—establish a compelling need for Intelligence Bureau information unrelated to the six plaintiffs in this case.[14]

Yet, even assuming *arguendo* that plaintiffs could establish a compelling need for that information, it would not end the Court's inquiry.  *See id.* at 945.  "[D]isclosure is required only if the compelling need outweighs the public interest in nondisclosure."  *Id.*  Here, even if plaintiffs had a compelling need for the unrelated documents, public interest in nondisclosure still militates against production.  Public disclosure of the material has the potential to endanger the safety of all New Yorkers, and in particular, it poses the significant, and obvious, risk of endangering the safety of undercovers officers employed by the NYPD, confidential sources, and all those who have assisted the NYPD in its counterterrorist efforts, such as those who have made use of the NYPD Counterterrorism Hotline.  Cohen Decl. at ¶¶ 26-27.

Plaintiffs' counsel dismissed these concerns at the pre-motion conference as "the kinds of issues that this court deals with every day and courts are able to determine through the use of protective orders."[15]  This position is stunning considering that the Second Circuit in *In re City of*

---

[14] As explained *Infra* at Point I, plaintiffs are similarly unable to show a compelling need for Intelligence Bureau strategy and policy documents.  Those documents would be just as sensitive, if not more so, than documents directly related to investigations, as strategy and policy documents may directly reveal methods of intelligence gathering within the Intelligence Bureau.  Accordingly, disclosure of those documents must be precluded pursuant to the law enforcement privilege.

[15] Leist Decl. Exhibit A at 27:12 – 27:14.

*New York*, recognized that the NYPD intelligence documents are so sensitive, and the danger of disclosure so great, that even an "attorney's eyes only" protective order is inadequate:

> Even if the "attorney's eyes only" procedure works in some *commercial* litigation, as well as some criminal cases, . . . the consequences of accidental disclosure are too severe to employ the procedure here.  If a party in a commercial suit obtains a competitor's trade secrets, at worst the party will gain an unfair financial advantage over his competitor.  Though such an injury is serious, it involves money, not public safety, and it can usually be remedied by an injunction or money damages.  Here, however, accidental disclosure of the Field Reports risks undermining important NYPD investigatory procedures and thereby endangering the safety of law enforcement personnel and countless New York residents.  Not only is that injury more severe, it is far more difficult to remedy.  *In re City of New York*, 607 F.3d at 936 (emphasis in original).

The Second Circuit is not alone in its view of the stakes for law enforcement personnel in a post September 11th posture.   In *Fazaga v. FBI*, plaintiffs alleged that the FBI "conducted an indiscriminate 'dragnet' investigation and gathered information on Plaintiffs and Muslims in Southern California based on their religion."   884 F. Supp. 2d 1022, 1042 (C.D. Ca. 2012).  Although the court in *Fazaga* precluded disclosure of the intelligence material under the state secrets doctrine, which is not an issue here, in doing so the *Fazaga* court recognized that:

> In the nearly eleven years that have passed since September 11, 2001, Islamic extremists have continued to plot and attempt to carry out numerous terrorist attacks both on U.S. soil and abroad against U.S. targets and allies.  Such attacks are not abstract events born out of fear, but are real and insidious.  *Id.* at 1043.

Regardless of what plaintiffs' counsel may believe, the information at issue here is highly sensitive and public disclosure carries real and significant consequences which are not easily remedied.   Disclosure must be limited to only those documents for which plaintiffs can demonstrate a compelling need and which can be safely and responsibly disclosed to plaintiffs' counsel.  That process logically includes limiting the number of individuals who have access to the information; limiting the manner in which the information can be accessed, and most importantly, limiting the amount of material disclosed to that which is truly necessary.

## POINT V

## PLAINTIFFS CANNOT MEET THE STANDARD FOR EXPEDITED DISCOVERY

Plaintiffs completely ignore and fail to address the applicable test for obtaining expedited discovery.  Courts in the Second Circuit employ two tests when deciding motions for expedited discovery.  *KWG Partners, LLC v. Sigel*, 11-CV-2890 (NGG) (JMA), 2011 U.S. Dist. LEXIS 75900, at *3 (E.D.N.Y. July 14, 2011).  The first test is the so-called *Notaro* test, under which plaintiffs must demonstrate:

> (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted.  *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

As an initial matter, plaintiffs cannot demonstrate that they will suffer irreparable injury if they are not granted the expedited discovery they seek.  Plaintiffs' claim that some threat of irreparable injury has grown out of defendants' letter to Judge Azrack dated September 10, 2013, is attenuated and speculative.[16]  The only injury which plaintiffs claim over and above those identified in their complaint is a generalized heightened fear.  Pl Memo at 18.  However, generalized fears do not state a constitutional injury.  *Laird v. Tatum*, 408 U.S. 1 (1972) (a challenge to the Army's surveillance program alleging individuals were continually surveilled and information about them was collected and stored in computer banks was dismissed as plaintiffs' allegations of injury were self-imposed**).**  Plaintiffs fail to articulate how the heightened fear they allege amounts to irreparable injury.  And importantly, plaintiffs fail to

---

[16] Although plaintiffs cast blame on defendants' September 10, 2013 letter (D.E. 11) for causing heightened fear of surveillance to the plaintiffs, the fact of the matter is that plaintiffs had allegedly been in fear of surveillance for years.  *See, e.g.,* Complaint at ¶¶ 10-15, 48, 50, 54, 90, 116, 136, 143, 145 (D.E. 1).  Moreover, contrary to what plaintiffs allege, there is nothing in defendants' letter that indicates the plaintiffs were investigated because of their religious beliefs, associations, and activities.  To the contrary, the information set out shows exactly the opposite.

explain **why** this allegedly increased fear looms greater than the significant injury that defendants' would suffer if plaintiffs' motion is granted.[17]

For the purposes of the expedited discovery analysis, plaintiffs have not demonstrated any need for receiving the requested information on an expedited basis.[18]   In contrast, and precisely because the NYPD does not conduct surveillance of individuals based solely on a person's religion, the NYPD does not have any practical way of producing documents about investigations and surveillance related to Muslim and non-Muslim individuals alike on the basis of their religion.  Cohen Decl. at ¶ 32.  In order to assemble responsive documents, the NYPD would have to divert trained intelligence personnel to review virtually every document maintained by the Intelligence Bureau over a nine year period.  *Id.* at ¶ 31.  As detailed in Deputy Commissioner Cohen's declaration, such an undertaking would be extremely burdensome under any timeframe, and would hinder the Intelligence Bureau's ability to thwart another terrorist attack.  *Id.* at ¶¶ 2, 32.  Moreover, the plaintiffs' proposed discovery would jeopardize both current and future investigations by compromising the Intelligence Bureau's methods and sources, and it would endanger the undercover police officers and confidential sources who are a valuable component of the Intelligence Bureau's counter-terrorism efforts.  Under the *Notaro* test, plaintiffs' motion for expedited discovery fails.

---

[17] Plaintiffs would similarly be unable to establish irreparable injury if they attempted to rely on their initial allegations of damages because of their undue delay in seeking preliminary relief for more than four months after filing the complaint and allegedly being aware of the complained of surveillance for years.  *See N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 13-CV-4974 (ERK) (VMS), 2013 U.S. Dist. LEXIS 143948, at *18 (E.D.N.Y. October 4, 2013) ("Undue delay on the part of the movant in seeking a preliminary injunction will weigh against a finding of irreparable harm.  That reasoning applies equally to a request for expedited discovery.") (citations omitted) (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

[18] Plaintiffs proposed a two week turnaround time for interrogatories and document requests. *See* Plaintiffs' Letter to Judge Chen Dated September 12, 2013 at 4 (D.E. 13).

The motion would similarly fail under the more flexible standard of reasonableness and good cause. *Better Packages Inc. v. Zheng,* 05-4477 (SRC), 2006 U.S. Dist. LEXIS 30119, at *8 (D.N.J. May 17, 2006). Courts in this district have declined to find good cause where the party seeking expedited discovery cannot demonstrate irreparable injury and/or a likelihood of success on the merits. *See*, *Evergreen Distribs., LLC*, 2013 U.S. Dist. LEXIS 143948, at *15-16; *KWG Partners, LLC*, 2011 U.S. Dist. LEXIS 75900, at *3. Nor can plaintiffs demonstrate that their proposed discovery demands are reasonable. The requests are profoundly overbroad and, as outlined in the Declaration of Deputy Commissioner Cohen, it is not feasible to provide responsive documents on the timeline that plaintiffs seek. *See Evergreen Distribs., LLC*, 2013 U.S. Dist. LEXIS 143948, at *12 ("The reasonableness analysis considers the practical implications of the request – for example, can the requested materials physically be gathered on the proposed timeline."); *Litwin ex rel. Shareholders v. Ocean Freight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) ("The sheer volume and breadth of plaintiff's discovery requests further renders them unreasonable . . . ."). Accordingly, plaintiffs' request for expedited discovery fails under either test for expedited discovery employed in this Circuit.

Finally, plaintiffs will not be prejudiced because if the record after bifurcated discovery warrants the additional discovery they seek, they will be able to obtain it. Indeed, as stated *infra*, to engage in the breadth and scope of discovery plaintiffs have requested is almost impossible to achieve on an expedited basis and would be tremendously prejudicial to defendants. For the reasons stated above, as plaintiffs only allege harms which purportedly existed for at least several years, there is no need for expedited discovery at this juncture.

**CONCLUSION**

For all the foregoing reasons, defendants respectfully request that plaintiffs' motion for expedited discovery be denied in its entirety, that defendants' motion for bifurcated discovery be granted,  and for any such further relief as the Court deems just and proper.

Dated: New York, New York
      October 30, 2013

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the
                     City of New York
                    Attorney for Defendants
                    100 Church Street, Room 3-147
                    New York, New York 10007
                    (212) 356-3532


                    By:    _____s/_____
                        Peter G. Farrell


Of Counsel:

Alexis L. Leist
Anthony M. DiSenso

TO:    Attorneys for Plaintiffs