# MAIN STREET LEGAL SERVICES, INC.

*City University of New York School of Law*

2 Court Square, Long Island City, NY 11101

February 18, 2014

**BY ECF**
Honorable Joan M. Azrack
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Raza et al. v. City of New York et al.*
                  Case No. 13-CV-3448 (PKC) (JMA)

Dear Judge Azrack:

Pursuant to the Court's instruction during the status conference held on February 12, 2014 in the above-captioned matter, we write to clarify why law student interns in the CLEAR project should be included in the Court's definition of "Plaintiffs' Counsel" or in its definition of "Plaintiffs' Designated Support Staff." *See* Ct.'s Draft Stipulation and Protective Order for the Produc. and Exchange of Confidential Materials §§ I(E), I(G) (draft dated Feb. 6, 2014). Excluding CLEAR law student interns altogether would be unwarranted and prejudicial to Plaintiffs and their counsel.

    **I.**    **The CLEAR Project**

The Creating Law Enforcement Accountability & Responsibility (CLEAR) project is part of the City University of New York (CUNY) School of Law's clinical arm, Main Street Legal Services, Inc., a non-profit legal services firm staffed by second- and third-year law students. Under faculty supervision, law student interns in the CLEAR project work on clinic cases for a year, engaging in all aspects of the representation.

Law student interns constitute a vital component of Plaintiffs' legal team in the above-captioned matter. They participate in many aspects of the litigation and perform a function akin to that of associates in larger law firms. In discharging these duties, law student interns must abide by the same rules of professional conduct—and any other requirements—that apply to attorneys engaged in the same practice.

Students' legal work through the CLEAR project includes, but is not limited to, conducting legal research; drafting legal pleadings, motions, and briefs; strategizing and making decisions in every aspect of a client's case; communicating with opposing counsel; and conducting fact investigations. Because clinic students outnumber supervisors, students perform the majority of legal work required to represent clinic clients, under the close supervision of

(t) 718.340.4558
(f) 718.340.4455
(e) ramzi.kassem@law.cuny.edu



clinic faculty. Students collectively provide thousands of pro bono hours each year in their representation of CLEAR clients.

## II.   Law Student Interns Are Considered "Counsel"

As discussed at the most recent status conference, law student interns in clinical practice under the supervision of undersigned faculty are considered "counsel" in cases involving far more sensitive information than the above-captioned matter. For example, in the protective orders governing habeas corpus proceedings challenging indefinite military imprisonment at the U.S. Naval Station at Guantánamo Bay, Cuba, law student interns fall under the definition of "petitioners' counsel" because it includes "attorneys … as well as co-counsel, interpreters / translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation."  *In re Guantanamo Bay Detainee Litig.* (*In re Guantanamo I*), 577 F. Supp. 2d 143, 147, ¶ 11 (D.D.C. 2008), attached as Ex. 1; *In re Guantanamo Bay Detainee Litig.* (*In re Guantanamo II*), Misc. No. 08-0442 (TFH), 2009 WL 50155, at *5, ¶ 11 (D.D.C. Jan. 9, 2009), attached as Ex. 2.

As long as they meet the requirements for access imposed on all "petitioners' counsel," *see In re Guantanamo I*, 577 F. Supp. 2d at 148-52, ¶¶ 16-45; *In re Guantanamo II*, Misc. No. 08-0442 (TFH) at *6-*10, ¶¶ 16-46, law student interns in the Guantánamo litigation can handle protected and law enforcement sensitive information, as well as information classified at the SECRET (S), TOP SECRET (TS), and TOP SECRET / SENSITIVE COMPARTMENTED INFORMATION (TS/SCI) levels.[1]  *See In re Guantanamo I*, 577 F. Supp. 2d at 147, ¶ 11; *In re Guantanamo II*, Misc. No. 08-0442 (TFH) at *5, ¶ 11.

All members of "petitioners' counsel" in those cases, including law students, read the applicable Protective Order and execute an acknowledgment before handling protected information. *See In re Guantanamo I,* 577 F. Supp. 2d at 165 (Acknowledgment appended as Exhibit B to Protective Order), attached as Ex. 3. Additionally, prior to handling classified information, all counsel, including law students, execute a Memorandum of Understanding Regarding Access to Classified National Security Information as well as a Classified Information Nondisclosure Agreement. *See In re Guantanamo I*, 577 F. Supp. 2d at 163, (Memorandum of Understanding Regarding Access to Classified National Security Information appended as Exhibit A to Protective Order), attached as Ex. 4; Standard Form 312, Classified Information Nondisclosure Agreement, attached as Ex. 5.

## III.   Law Student Interns Responsibly Handle Sensitive Information

The information that law student interns handle in the aforementioned "national security" matters is more sensitive than the records at issue in this case. Without minimizing the New York City Police Department Intelligence Bureau's concerns, it bears emphasis that, since 2005, dozens of law student interns working under the supervision of undersigned faculty have

---

[1] Information can be properly classified at different levels by any Executive branch agency of the U.S. federal government in the interests of national security or pursuant to an Executive Order. The lowest level of classification is CONFIDENTIAL (C), followed by SECRET (S), TOP SECRET (TS), and TOP SECRET / SENSITIVE COMPARTMENTED INFORMATION (TS/SCI). *See, e.g.,* Exec. Order No. 13526, Classified National Security Information, 75 Fed. Reg. 707 (Dec. 29, 2009); *In re Guantanamo I*, 577 F.Supp.2d at 146, ¶ 8a; *In re Guantanamo II*, Misc. 08-0442 (TFH) at *5, ¶ 8a.

responsibly and securely handled investigative and intelligence reports that were deemed classified by multiple U.S. federal government agencies entrusted with the conduct of security and defense matters.

While many of those records remain classified and therefore cannot be discussed in this letter, some have been declassified and cleared for public release by the equity-holder federal agencies that "owned" the records. A cursory review of the now-public evidentiary packet produced by the U.S. government in one of the many such cases that our clinic has handled offers a helpful snapshot of the types of classified records handled by our law student interns in the course of their clinical practice.

Indeed, the U.S. government's Exhibit List in that case reflects both intelligence and investigative reports produced—originally in classified form—by the Federal Bureau of Investigation (FBI), the Department of Defense, and other agencies. Exhibit List for ISN 329, *Faraj v. Bush*, No. 05-CV-1490 (PLF), ECF No. 208-2 (D.D.C. July 29, 2009), attached as Ex. 6. These include FD-302 reports issued by the FBI to memorialize interrogations and other investigative actions. *See, e.g.,* ISN [Redacted] FD-302 (June 11, 2002), *Faraj v. Bush,* No. 05-CV-1490 (PLF), ECF No. 208-3 (D.D.C. July 29, 2009), attached as Ex. 7. They also include investigative and intelligence reporting by the Department of Defense and other U.S. government entities and agencies. *See, e.g.,* ISN [Redacted] FM-40 (Nov. 2, 2004), *Faraj v. Bush*, No. 05-CV-1490 (PLF), ECF No. 208-3 (D.D.C. July 29, 2009), attached as Ex. 8; [Title Redacted], *Faraj v. Bush*, No. 05-CV-1490 (PLF), ECF No. 208-3 (D.D.C. July 29, 2009), attached as Ex. 9. Both classes of records, as well as others that cannot be described in this letter, constitute intelligence and investigative information reflecting sources and methods.

Multiple generations of law student interns have safely and responsibly handled such classified information in the course of their clinical practice, under the supervision of undersigned faculty.[2] There has not been a single spillage incident in years of clinical practice in an area of law that routinely involves sensitive information. Thus, all available evidence indicates that law student interns, no less than attorneys and support staff, will abide by the terms of any protective order issued by the Court in this matter, just as they already have in numerous other cases.

### IV. Excluding Law Student Interns Would Unfairly Prejudice Plaintiffs

Categorically excluding law student interns from the Protective Order's scope would be arbitrary and would undermine parity as between the parties in this matter as well as Plaintiffs' right to counsel of their choice.

While Defendants' counsel has attempted to paint law student interns' participation in this litigation as "fleeting," the time-limited nature of involvement in legal matters is neither unique to, nor more pronounced with, law student interns. Associates and paralegals in private law firms (or at Corporation Counsel) may leave or be reassigned after only a matter of months—such is the reality of modern legal employment. The proposed Protective Order does

---

[2] Attached as Ex. 10 are the Declarations of Erin Herro, Esq.; Shirley Lin, Esq.; Joseph A. Pace, Esq.; Darryl Li, Esq.; and Garth L. Schofield, Esq. The declarants are but a few of the law student interns who all responsibly handled protected and classified information in connection with their clinical practice and under the supervision of undersigned faculty. They are all now officers of the court and continue to uphold their professional obligations.

not state that attorneys, paralegals or other staff must agree to participate in the litigation for a minimum period of time in order to receive access to discovery, nor should it.

A categorical exclusion of all law student interns would limit even more the resources that Plaintiffs' pro bono, non-profit legal team can bring to bear on pending litigation. Moreover, because an unknown number of key documents may be subject to the Protective Order's restricted access provisions, the availability of assistance is all the more critical. Ultimately, the effectiveness of Plaintiffs' counsel could be seriously compromised if an important part of the legal team cannot access information and documents that are at the heart of the case at bar.

Finally, a categorical exclusion would improperly meddle with the composition of Plaintiffs' legal team and with Plaintiffs' choice of counsel. In another context, the Supreme Court has held that "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Additionally, the First Amendment protects both client and counsel against intrusion into the attorney-client relationship. *See, e.g.*, *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585-86 (1971); *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222-23 (1967); *NAACP v. Button*, 371 U.S. 415, 429 (1963).

Accordingly, law student interns in the CLEAR project should be included in the Court's definition of "Plaintiffs' Counsel" or in its definition of "Plaintiffs' Designated Support Staff."[3]

Respectfully submitted,

_____/s/_____
Ramzi Kassem
Diala Shamas
*Supervising Attorneys*

Michelle Born
Benjamin Lunsford
*Law Student Interns*

**CLEAR project**
**Main Street Legal Services, Inc.**
CUNY School of Law
2 Court Square
Long Island City, NY 11101

*Counsel for Plaintiffs*

---

[3] During the status conference held on February 12, 2014, the Court instructed Plaintiffs' counsel to submit the instant letter by February 18, 2014 and Defendants' counsel to respond by February 21, 2014. However, the Court's Minute Order, dated February 14, 2014, directs Plaintiffs to file by February 17, 2014. Because that date is a federal holiday, Plaintiffs' counsel will follow the Court's initial instruction.